Good morning, Your Honor. You may proceed. Thank you. May it please the Court, Rod Divalbis, on behalf of the defendant and appellant, SKS Associates LLC. I would like to reserve three minutes for a rebuttal, if I could. There are two distinct issues that are part of this appeal. The first is a de novo review of the denial of the appellant's motion to compel arbitration. The second issue, and it is a completely distinct issue with a different standard, is whether the district court abused its discretion in imposing a class-wide injunction prior to class certification. In coming to the decision with respect to arbitration, there is no dispute from either side that there is a presumption, a basic presumption, in favor of compelling arbitration. There is a minor difference in the context of whether there is an expired agreement or an unexpired agreement. If it is an unexpired agreement ---- Kennedy, counsel, could you point to me where in the record there is any indication that the $88 tax claim arose during the period of the lease? It was imposed during the period of the lease. Yes, I can, Your Honor. So? First of all, if I could, it's the claim is not just limited to this $88 as a review of the complaint will indicate. But with respect to the $88, as paragraph 6 of the Equipment Finance Lease specifically indicates, that that agreement continues until all obligations under the lease are completed. I understand that. Let me try again. Where is there any evidence that the $88 was imposed as a tax by any taxing authority on the piece of equipment that was leased during the time that the lease was in vigor, before it was terminated? Take your time and point me to a reference in the record.  on the piece of equipment that was leased during the time that the lease was in vigor. And if I could, Your Honor, I could get a page cite, the declarations of Ms. Krieger and the declaration of Mr. Murski that were submitted in support of the motion to compel arbitration. And who was the taxing authority? I believe it is from San Mateo County, Your Honor. San Mateo County? And for what tax year was it? I do not believe that that's – there's anything in the record that specifies the tax year. There is – the record indicates that the SKS received – there were billings on a – on a – when the – when the assessor of a county here in California sends you a tax bill, strangely enough, it says tax bill. And I would like to know where there is in the record any indication that this $88 was assessed by the county assessor of the This is the third time I've asked that question. And the answer is, Your Honor, the only thing in the record to that effect Is a declaration of Mr. Murski and of who? And a declaration of Ms. Krieger. Kramer. Krieger. K-r-i-e-g-e-r. In those declarations, that – there are declarations that respond to that very question and state affirmatively that those taxes were due during the term of the lease. The taxes were due during the term of the lease? Yes, Your Honor. By Krieger and Murski. All right. Yes, Your Honor. Let's take a look. With respect to the burden for an unexpired lease, it's a very, very strong presumption. And it's to the effect that if there's any reasonable interpretation that covers the dispute, then arbitration must be compelled. The Lytton Court would not extend that presumption quite that far in an expired contract. But as even the appellee indicates, there is still a presumption, and I believe the phraseology used by the Lytton Court is that any doubts would be – should be resolved in favor of coverage. Well, I guess, though, I'm still on what Judge Bea was saying. You know, I'll have to look again at those declarations. But it just seems that, you know, Campbell's contract required that any action be commenced within a year of its accrual. What is the effect of this provision on SKS's efforts to collect on the alleged obligation almost four years after the claim must have accrued? Because you can't put a date on it. I'm not seeing anywhere where you're saying, hey, there's a date on this. There may well be statute of limitations issues once this matter is sent to arbitration. There may be a statute of limitations defense for that $88. But that's – that's not what is before this Court. That's not what was before the district court. What is before the district court is the plaintiff's assertion that there were breaches of the lease. But there are assertions by the plaintiff that there were breaches of the equipment finance lease that had an arbitration provision. Are these declarations just sort of conclusory, that they say that this was owed during that time? Or do they – Yes. There is no specificity in terms of attaching a property tax bill. That is correct. It's – it is a much more broadly based assertion. Assertions don't do it. A declaration, Your Honor, based upon knowledge. Basis of knowledge. That Krieger and Murphy say, I have knowledge that this bill, that the taxing authorities levied this tax, was in this period of time. There are declarations submitted by those individuals to that effect. And I submit that – that if – if the only issue in this lawsuit had to do with the $88 that was attempted to be collected in 2011, there would be some sort of substance, significant substance to – to that question. However, if you look at the Second Amended Complaint, the complaint is not so limited. The plaintiff is – What are you trying to recover other than the $88 from Ms. Campbell? Interest and fees? But – but this lawsuit is not about what we are trying to recover. This lawsuit is about – What were you trying to recover? It was – what was trying to be recovered in – in 19 – in 2011 was the $88 and fees. But this lawsuit is not simply about that. Oh, I'm aware of that. The lawsuit is about a – But you see – you see, counsel, where are you from? Pueblo, Colorado. California has a very straightforward taxing system. It may not recover enough taxes for California, but it tries. And the property taxes, you get a bill for the period of time – for the whole tax years, July to July, and you have to pay it in December and in April, right? Now, there's a bill, and it tells you exactly what you have to pay and why you have to pay it. And with all the little districts, mosquito abatement, school districts, and everything else, it's on the bill. I'm very familiar with that, Your Honor. Actually, I live now in California. You live now in California. All right. Do you have that bill? Is it attached in this record somewhere? As I've indicated, it is not, Your Honor. So how does Mr. Krieger and Mr. Murski, how do they have personal knowledge that the tax assessor assessed these taxes at – during the period of this lease? I do not know the answer to that question. Well, isn't that 100 percent – doesn't that kill your case? Absolutely not, Your Honor. Why? Because we are not the plaintiffs. We are the defendants. What we're talking about – Well, no, but if you can't establish that this debt arose during the lease, you're out of court. No, we – we would not be able to collect on that amount. That's right. You wouldn't be able to collect on it, and if it wasn't collectible under the arbitration clause, wasn't collectible on the lease, it hadn't arisen during the lease, you wouldn't have a right to arbitrate it. If it didn't arise out of, relate to, or touch – somehow touch the lease, then we may not have a right to arbitrate. But the point that I've been trying to make, and I apologize – Well, you have the burden of proving that this debt arose during the time of the lease in order to arbitrate it. No. That is incorrect, Your Honor. You don't. Tell me why not. Because what we're dealing with is we are not the plaintiff in this action. We are the defendant. The plaintiff has brought – You're claiming a right to arbitrate under the lease. Yes, Your Honor. The debt has to arise under the lease. No. The claims – the plaintiff's claims need to arise out from the lease. And that's why you need to look at the Second Amended Complaint. And all you have to do is look at the Second Amended Complaint, and it's absolutely, unequivocally clear that all of her claims, or virtually all of her claims, arise out of or relate to that lease. Again, we are not the plaintiff in the underlying proceeding. We are a defendant. She is suing SKS for violations of the lease. All you have to do is look at – start with the very first paragraph of the Second Amended Complaint. She starts off by saying she's bringing a claim which are based upon, and I quote, acts against small business owners in connection with the leasing of credit card processing equipment. She is suing my client under the lease. There's the paragraph – the same paragraph talks about she was induced to enter into the lease. Later on, she said she signed a lease that purportedly allowed us to take out taxes. She's suing us based upon this equipment finance lease. If you look at paragraph 28, 71, paragraph 73, 154, 278, 276, 278 of the complaint, of the Second Amended Complaint, and that's what this panel needs to look at. It makes it abundantly clear that she is suing my client for acts that were done during the term of the lease and under the lease. You look at the section that – the specific – Where does the plaintiff allege in a complaint, in the First Amended Complaint, or Second Amended Complaint, that the claim of $88 arose during the time that she was leasing the machine? She – at paragraph 507. That is, there's a section of the complaint that deals specifically with Ms. Campbell. That's from paragraph 499 to, I believe, 507. In 507, she alleges that in 2011, another attempt under the lease was made to try and deduct from her account. She also alleges – Let me try again. Okay. Does the plaintiff ever allege that the tax of $88 arose during the term of her lease before termination? Yes, she does, Your Honor. Where? She alleges it in the paragraphs 499 to 511, where she talks about taxes were taken from her account during the term of the lease in 2002, in 2003, in 2004, in 2005. And she paid everything, and she's saying that this has – that they charge – they're charging her for something she doesn't owe. She's also – I apologize, Your Honor. She's also saying that by doing what I've just articulated, taking money out in 2002, 3, 4, 5, 6, and 7, that SKS's predecessor breached the lease, that we were not supposed to be doing that. She alleges that there – in fact, she asks – she brings a claim for conversion. She seeks restitution of those monies. Her claim – her claim arises out of all of those actions during the 2002 through 2007 time period, which there is no doubt the lease is in effect. That if you want to simply isolate on the 2011 Act, it still arises out of the lease because my client was bringing or trying to collect under the lease. But if you look at the complaint as a whole, the plaintiff seeks recovery for all those funds during the period of time that even the plaintiff admits the lease was in effect. If you want to reserve any time. I'll – if I could talk briefly about the injunctive relief. Well, okay. I'm not going to give you extra time, so go ahead. The injunctive relief – again, an injunction has to be narrowly tailored to meet only the factors necessary to protect the plaintiff. So what's your best argument that CEPEDA applies despite the fact that CEPEDA – in the CEPEDA, the court had denied class certification, and my understanding is that hasn't happened here yet, right? The class certification hasn't even been sought. There's been no discovery, no – nothing along those lines. What has happened is, again, this is not a narrowly framed injunction. The easy riders, CEPEDA, LeVon, all indicate that in a situation like this where you know the plaintiffs, you need a narrowly tailored injunction so that you can maintain the narrow breadth of the injunctive relief. There's no reason to make it on a class-wide basis to protect the named plaintiffs. We know who the nine plaintiffs are – 11 plaintiffs are. We know what they want the injunctive relief for. That would be number one, for – so that their accounts are not hit, and number two, that they're not reported to a credit agency. And that can be easily done without putting that out on a class-wide basis, and there's no need at this point to put it on a class-wide basis. It's abuse of discretion to do that as it was to decide that no bond is necessary without having an evidentiary hearing. Excuse me, Counsel. I thought I heard you say class relief hadn't been sought. That's not accurate. That is inaccurate, Your Honor. Class relief was sought. As a matter of fact, at the end of the hearing on the preliminary injunction, Judge Wilkins had a briefing schedule on the class certification. I thought a hearing was supposed to have been held in January on it, but apparently that never happened. As my understanding, that has not happened. As a district court judge, I'm pretty familiar with that, so. I apologize for the misstatement in that respect. All right. You're over your time. Thank you. Good morning, Your Honors. May it please the Court. My name is Adam Gutride, and I represent the plaintiffs. Good morning. Good morning. Your Honors, I think I will start first with Judge Bennett's question just to explain the procedural posture of class certification. You're correct that a class certification schedule had been set. The Court continued the schedule. Currently, class certification motions are due in April. However, the parties are going to be further requesting a continuance because the discovery necessary for class certification has been delayed by the defendants. So we expect that a class certification hearing will happen sometime later this year. But to follow up on Judge Callahan's point, it was perfectly appropriate for the district court to issue an injunction in this case pending class certification. The injunction order itself says that the court will revisit the injunction if no class is certified, which follows very closely. If Zepeda, the class had been denied, but by the same token, I think what Zepeda stands for still doesn't allow for overbreadth. So why isn't this overbroad? I mean, it would seem to me that you have to, you know, you would have to somehow put together Zepeda and Brezgal and tell me why you need it for more than just the named plaintiffs. Well, what we have here, Your Honor, is a situation which the defendants have made a false claim that they are entitled to approximately $50 to $100 from about a million people. They have no evidence to support that claim, going to the questions that Judge Bea asked at the beginning. There was a further order. We're not dealing with that. I'm sorry? We're not dealing with their claims. We're dealing with, let me put it to you as directly as I can. You have a plaintiff, no class action, Campbell, who says that $88 should not have been charged to her. She didn't pay the $88. She has a preliminary injunction now stopping the collection of SKS who has paid $100,000 to get the right to collect $6 million. Now, don't you think your remedy of class-wide injunction that SKS can't collect from anybody any of the $6 million is a little overbroad to protect the interest of a person who hasn't paid $88? That's where you are now. Now, if you're saying, oh, well, SKS and Northern Leasing and Lease Finance Group are intertwined and we don't know where the money is going to go, why sue them all and get a writ of attachment? Why isn't the legal remedy of a writ of attachment against present defendants sufficient to protect your $88 which you haven't paid? The reason, Your Honor, is because as the district court found, these entities appear to be shell companies, especially SKS. What's the evidence on which they're shell companies? All I see in the district court's ruling is that it is alleged that they are shell companies. Allegations was not before the court. This wasn't a 12b-6 motion. This is a preliminary injunction motion. Where's the evidence? And even if they were shell companies, right, you sued all of them. You can recover a joint and several judgment against all of them if you prove their alter egos are shell companies. Assuming, Your Honor, that the money stays within the companies that we sued, you're correct. Well, attach it. Your Honor, if we can get a writ of attachment. Why isn't the pretrial legal remedy of attachment and garnishment where you have to prove probability of success and you have to probably prove that a bond is unnecessary, why isn't that perfectly adequate rather than the extraordinary remedy of stopping a $6 million business by a claimant who hasn't paid $88? Is that the balance of equities? I have to say, Your Honor, that I am not familiar enough to know about the procedures for writ of attachment to directly answer your question. Well, get familiar with it. I will, Your Honor. I will. I can say, Your Honor, that this is an enterprise that at every step of the way has been unable to present even the slightest bit of evidence that anything it's doing is justified by any legal or factual right. So what we have here is similar from the district court's perspective. The district court asked them to present some evidence that even Ms. Campbell's money was ever paid to any taxing authority or that they had any right to collect it. They could not do that. They could not. Not only in the record that's before you on this motion, but Your Honors, a separate motion panel received a motion to stay pending appeal. And in connection with that motion, which was also heard below, Judge Wilkin made further findings because they came forward with additional evidence. Not only did they... Let me ask you this. You say that these are shell companies, right? Right. Are there any financial statements in the record that show what their financial condition is? Not yet, Your Honor. Are there any credit reports? No, Your Honor. Why do you say they're shell companies? You have the burden of proving that. Upon what basis evidentiary in the record is there any indication that these companies were thinly capitalized? Following corporate... They don't have to follow corporate niceties. There is evidence in the record of the... Well, actually, Your Honor, I might... That's what I want. I want you to... Okay. I don't want him to speak because... Not allegations. Not allegations. Not recitations by the district court judge that there were allegations. Not shouts that these are shell companies. Tell me what the evidence is. At the time that the district court considered this motion, the evidence in the record was... The evidence that was presented was the supposed right of the defendants to collect this money under a contract that Your Honor referenced, the contract called the Purchase Agreement. The Purchase Agreement had an exhibit, which was Exhibit A, which was a spreadsheet. The contract said that Exhibit A to this contract is the rights that we are purchasing. There was no person who was able to declare that they had personal knowledge about the preparation of Exhibit A or that the Exhibit A that was presented to the court was actually the same Exhibit A that was attached to the contract because they were not presented together. Further, when that challenge was made, the defendants came forward with a new Exhibit A, which had a completely different list of leases that they supposedly had purchased the rights to. The court reviewed all those facts and found that there was a lack of foundation of evidence of this actual purchase of these assets relating to Ms. Campbell, that there was no... that the declarations on the point not only of Mr. Murski and... If there was no actual purchase, then the contracts were owned by either Equipment Financial Group or Northern Leasing. If there was no purchase, right? The... Well, tell me... Ms. Campbell's contract was owned by Lease Finance Group. Tell me why these are shell corporations or shell companies, they're not even corporations. The evidence, I agree with Your Honor, there is not yet evidence in the record as to the lack of capitalization of the companies and so forth. The evidence that's in the record to date is along the lines of that this is a fraudulent agreement that doesn't exist only for the purposes of trying to take money from people that is not actually owed. And the method that's being enjoined, which is also important, Your Honor, is only the method of using automated bank withdrawals, which are important because companies like Ms. Campbell's if money is taken from their accounts, they have only until midnight, the day the money is debited, to do anything about it. If they do not catch the debit on the day that it is done, there is no way statutorily for them to get that reversed unless in the good graces of their bank, the bank discretionarily reverses it. So the only way to protect this large class of people, this proposed class of people, is to have this criminal conduct stopped now before a million or half a million people... And they just can't use the bank drafts. That's right. The only things they're prohibited from doing by this injunction, Your Honor, are to use automated bank withdrawals and to make reports to credit reporting agencies. Those are the only two things. They can continue to send debt collection letters. They can file small claims actions or large claims actions if the amount... So their business is not interfered with if they even had a business, which they don't because the business is constructed for the purposes of this criminal enterprise. The business is... Under the contract that is in evidence, they have the right to use the automatic debit. The contract does not, as far as I know, Your Honor, talk about automatic debits. The contract only talks about... You're talking about Ms. Campbell's contract? Yes. Ms. Campbell's contract says that during the term of her lease, they may make automated debits. Yes. So what you're saying is because Ms. Campbell hasn't paid $88, you're going to tell SKS they can't use the debit mechanism, which is their way of doing business, to collect $6 million? No, Your Honor. What we're saying is that Ms. Campbell never didn't pay $88. She did pay. They made up a claim against her. That's your claim. And against a million other people. That's your claim. Right. And there is... Right. She hasn't paid the $88. They have not been able to take it from her account because she closed her account, luckily. So the answer is she has not paid. True? True. All right. Fine. Yes. I'm sorry if you thought I was disagreeing with that, Your Honor. They haven't been able to get the money from her, but they did take it from thousands of other people. And if this Court were to vacate the injunction prior to a hearing on class certification, they will go and take money from tens of thousands of other people who do not owe that money. Those people will be unable to get the money back unless there is some way for the District Court to prevent that from occurring. And the judge here narrowly tailored her injunction so that it would only apply to this particular type of activity, the automated withdrawals, that it would be reconsidered at the time of class certification and that it would be narrowly tailored only to expired leases. So these three things were the way that the judge did balance the equities. And when the judge asked the defendants to come forward with evidence as to how they would be harmed by the injunction, they were completely unable to do so. They, in fact, they didn't present any evidence of any employees who would lose their jobs. Why? Because there are no employees. These companies don't really exist. They didn't present any evidence of how they, you know, what outstanding obligations they had because there are no outstanding obligations. What they've done is create this fake enterprise to go after people for money that's not owed to them. And if a judge can't prevent that from happening, ex ante, then we have a serious problem with the system. Well, I guess obviously the injunction, when you go to the overbreath, obviously if it appears that Judge Wilkins did not think that they presented evidence that Ms. Campbell ever even owed them anything, that she wasn't satisfied with what she had in front of her, that the people that she had, that they just hadn't established, you know, that she would have expected something like Judge Baio was talking about some sort of tax bill or something to show the existence. So as to the nine, but then there's all these other people out there that we really don't know that much about. So that's, can she make that leap from there? Well, Your Honor, in the context, it seems that clearly the judge seems to think that what's going on has an element of that they're just not showing that anyone really owes them any money and that the automatic deposits allow them to just get the money and then who's going to be able to, who's going to spend a whole lot of time going after $88? But if $88 times whatever is $6 million, that's a lot of money. That's, that's exactly right, Your Honor. And if Your Honors are concerned about the procedural posture of this injunction before class certification, we would suggest that there could be a limited remedy such as was in the National Center case, which is cited in the papers, where the court remanded for the purposes of reconsidering the injunction in connection with a class certification hearing and instructed the district court that if class was not certified that the injunction was to be vacated. The same type of thing could happen here and because, Your Honors, if necessary, we could even bring the motion for class certification with regard to this SKS issue earlier than the rest of the case, which is not going to probably be heard for class certification until, as I said, the end of the year, so that we don't have a situation where tens of thousands or hundreds of thousands of people suddenly find a bunch of money is missing from their bank account and can't do anything about it. That's, that's the real issue that we're trying to present, prevent here. Your Honors, I will, I will ask, I know, Your Honors, you're going to look at the Mursky and Krieger declarations because they're so heavily relied upon. They don't say anything at all about Ms. Campbell owing any of this money. They don't even mention Ms. Campbell. The paragraphs of the complaint that are cited also do not put into evidence, put in issue the lease. What Ms. Campbell is claiming is that they went after her, tried to take money out of her bank account with no relationship to her lease. And it's the defendants who have manufactured this connection to the lease. I see that I'm out of time. Thank you very much. Thank you. Thank you, Mr. Cutright. I think that both sides have used their time. Right. Unless either of my colleagues have a question, this matter will be submitted. Thank you both for your argument. Did they have 29 seconds or no? I was told that I had 15 or 2 minutes. Oh, no. The rebuttal is included in your 15. You used all your time. Did you use all the time? We were over. Okay. You were both over time. We're going to briefly recess to reconvene the panel for the Riggs case. So if you're here on the Riggs case, don't go anywhere because Judge Zbeya and I will be back out with Judge Wallace. All rise. Court is at
judges: Bennett, Callahan, Bea